UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| **DALE GLEASON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:19-cv-00134-SLC |
| | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY**, *sued as Andrew M. Saul,* | ) | |
| *Commissioner of the Social Security* | ) | |
| *Administration,*[1] | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Dale Gleason appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI").[2] (ECF 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

### I.  FACTUAL AND PROCEDURAL HISTORY

Gleason applied for SSI in September 2015, alleging disability as of October 1, 2011. (ECF 10 Administrative Record ("AR") 15, 163). Gleason's application was denied on initial consideration and on reconsideration. (AR 67, 79-80, 95). A hearing was held on October 3, 2017, before administrative law judge ("ALJ") Robert Long, at which Gleason, who was represented by counsel, and a vocational expert testified. (AR 27-57). On February 13, 2018, the ALJ rendered an unfavorable decision to Gleason, concluding that he was not disabled

---

[1] Andrew M. Saul is now the Commissioner of Social Security, *see, e.g., Saunders v. Saul*, 777 F. App'x 821 (7th Cir. 2019); *Michael T. v. Saul*, No. 19 CV 1519, 2019 WL 3302215, at *1 n.2 (N.D. Ill. July 23, 2019), and thus, he is automatically substituted for Nancy A. Berryhill in this case, *see* Fed. R. Civ. P. 25(d).

[2] All parties have consented to the Magistrate Judge. (ECF 13); *see* 28 U.S.C. § 636(c).

because he could perform a significant number of unskilled, sedentary jobs in the economy despite the limitations caused by his impairments. (AR 15-21). The Appeals Council denied Gleason's request for review (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

Gleason filed a complaint with this Court on April 5, 2019, seeking relief from the Commissioner's final decision. (ECF 1). In this appeal, Gleason argues that the ALJ: (1) failed to properly consider whether his impairments met or equaled listing 4.11, chronic venous insufficiency, and (2) failed to account when assigning the residual functional capacity ("RFC") for his need to elevate his leg above his heart. (ECF 20 at 6-9).

At the time of the ALJ's decision, Gleason was thirty-seven years old (AR 163); had obtained his graduate equivalency degree (GED) (AR 186); and had past work experience as a machine shop laborer (AR 51, 186). In filing his application for SSI, Gleason alleged disability due to "[b]lood clotting disease." (AR 185).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869

(7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's.  *Id.*  Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive.  *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted).  "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits."  *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III.  ANALYSIS

#### A.  *The Law*

Under the Act, a claimant is entitled to SSI if he establishes that "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence:  (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. Part 404, Subpart P, App'x 1; (4) whether the

3

claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[3] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. § 416.920.  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled.  *Id.* (citation omitted).  The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner.  *Clifford*, 227 F.3d at 868 (citation omitted).

### B.  The Commissioner's Final Decision

On February 13, 2018, the ALJ issued the decision that ultimately became the Commissioner's final decision.  (AR 15-21).  At step one of the five-step analysis, the ALJ found that Gleason had not engaged in substantial gainful activity since his application date, September 18, 2015.  (AR 17).  At step two, the ALJ found that Gleason had the following severe impairments:  factor V Leiden disease with deep venous thrombosis and embolism of the proximal left lower extremity, obesity, and stasis edema of the left lower extremity.  (*Id.*).  At step three, the ALJ concluded that Gleason did not have an impairment or combination of impairments severe enough to meet or equal a listing.  (*Id.*).

Before proceeding to step four, the ALJ determined that Gleason's assertion of a complete inability to work was "not entirely consistent" with the medical evidence and other evidence of record.  (AR 19).  The ALJ assigned him the following RFC:

---

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations.  20 C.F.R §§ 416.920(e), 416.945(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. § 416.920(e).

4

> [T]he claimant has the [RFC] to lift and/or carry and push and/or pull 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk for about two hours in an eight-hour day, and sit for about six hours in an eight-hour day. He can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs. He can occasionally balance, stoop, kneel, crouch, and crawl. In addition, he needs to elevate one of his legs to waist level for up to 30 minutes at a time for a total of up to two hours in an eight-hour day.

(AR 18). The ALJ found at step four that Gleason was unable to perform any of his past relevant work. (AR 19). At step five, based on the RFC and the vocational expert's testimony, the ALJ concluded that Gleason could perform a significant number of unskilled, sedentary jobs in the economy, including address clerk, order clerk, and information clerk. (AR 20). Accordingly, Gleason's application for SSI was denied. (AR 21).

### C. Listing 4.11

Gleason challenges the ALJ's step-three finding, arguing that the ALJ erred by concluding that he did not meet or medically equal any listing—specifically, listing 4.11, chronic venous insufficiency. For the following reasons, while the ALJ's step-three determination was terse, it does not necessitate a remand of the Commissioner's final decision.

1. Applicable Law

"Under a theory of presumptive disability, a claimant is eligible for benefits if [he] has an impairment that meets or equals an impairment found in the Listing of Impairments." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(d); 20 C.F.R Part 404, Subpart P, App'x 1)). "The listings specify the criteria for impairments that are considered presumptively disabling." *Id.* (citing 20 C.F.R. § 404.1525(a)). To meet or equal a listed impairment, a claimant must satisfy *all* of the criteria of the listed impairment. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir.

5

1999).  The claimant bears the burden of proving his condition meets or equals a listed impairment.  *Ribaudo*, 458 F.3d at 583; *Maggard*, 167 F.3d at 380.  Having said that, "an ALJ should mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require a remand."  *Ribaudo*, 458 F.3d at 583-84 (citing *Barnett*, 381 F.3d at 668; *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003)); *see also Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

The criteria of listing 4.11 is "[c]hronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system" and either: (1) "[e]xtensive brawny edema (see 4.00G3) involving at least two-thirds of the leg between the ankle and knee or the distal one-third of the lower extremity between the ankle and hip"; or (2) "[s]uperficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least [three] months of prescribed treatment."  20 C.F.R. Part 404, Subpart P, App'x 1 § 4.11.

    2. Analysis

When considering the listings at step three, the ALJ stated, in relevant part:

> No treating physician or examining physician has indicated diagnostic findings that would satisfy any listed impairment.  After independently considering the listings, the undersigned finds that the claimant's impairments, either separately or in combination, do not meet or medically equal the criteria of any listed impairment.  The listings have threshold requirements that are not met in the instant case.

(AR 17-18).  Gleason contends that the ALJ's step-three analysis does not provide the Court with any ability to engage in meaningful review as to the criteria of listing 4.11, resulting in an impermissible perfunctory analysis.  (ECF 20 at 6-8); *see, e.g.*, *Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015) (remanding the ALJ's step-three finding regarding listing 1.04 as

6

perfunctory). Gleason argues that he met the criteria of listing 4.11 because he was "diagnosed with a deep vein thrombosis (obstruction of the deep venous system) as well as having documented edema." (ECF 20 at 7 (citing AR 337, 412, 418, 462, 679, 682, 684)).

While the ALJ should have written specifically about listing 4.11 at step three, the ALJ nevertheless adequately considered the criteria of the listing later in his decision such that his reasoning as to the listing can be sufficiently traced. *See Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) ("There is no requirement of . . . tidy packaging . . . ; we read the ALJ's decision as a whole and with common sense." (citations omitted)). The ALJ discussed the medical evidence pertaining to listing 4.11 as follows:

> The record indicates the claimant has a long history of acquired coagulation factor deficiency (factor V Leiden disease) resulting in deep vein thrombosis and embolism involving his left leg requiring ongoing anticoagulation medication (Exhibits 1F; 2F; 9F; 16F). Since his alleged onset date, the claimant has also been diagnosed with stasis edema in his left lower extremity (Exhibit 17F). . . . At times, the claimant has had edema in his left leg (Exhibits 17F; 18F). He has also occasionally had some limited range of motion in his left knee (Exhibit 5F). Further, the claimant has sometimes had some diminished pulses in his left lower extremity (Exhibits 6F; 10F). He has also demonstrated some difficulty with being able to bend and pick up objects from the floor (Exhibit 5). In addition, he has displayed a wobbly heal and toe gait (Exhibit 5F). On th other hand, the claimant has frequently had no edema, cyanosis, or clubbing in his extremities (Exhibits 4F; 7F; 9F; 15F). He also displayed no joint swelling or deformity (Exhibits 4F; 7F; 15F). Further, the claimant has had normal musculoskeletal range of motion (Exhibits 9F; 14F). He has also routinely had normal pulses in his upper and lower extremities (Exhibits 4F; 7F; 9F; 15F). In addition, the claimant has been neurologically intact, with normal muscle tone, reflexes, and sensation (Exhibits 4F-7F; 15F). He has also demonstrated a normal tandem gait and posture (Exhibit 5F). Furthermore, the claimant has often been in no distress (Exhibits 4F-7F; 9F; 14F; 15F). He has also routinely been noted to be stable with no complaints (Exhibit 17F).

(AR 19).

Therefore, with respect to the relevant criteria of listing 4.11, the ALJ observed that

7

Gleason had edema in his left leg "at times" (AR 19 (citing AR 678-92)), but that "[o]n the other hand, [he] . . . frequently had no edema, cyanosis, or clubbing in his extremities" (*id*.; *see* AR 270, 273, 276, 279, 282, 285, 291, 294, 297, 300, 303, 306, 309, 312, 316, 320, 324, 327, 376, 379, 401, 404, 407, 533, 621, 624, 627, 630, 633, 636, 639, 642, 645, 654, 688).  Notably, aside from the deep vein thrombosis Gleason experienced in 2011 (AR 462), the edema that he cites since that time is described as "+1 edema" or "minimal swelling" (AR 680, 682).  Simply put, while the medical evidence indicates that Gleason did experience some leg edema at times, he fails to point to any evidence establishing "extensive brawny edema . . . involving at least two-thirds of the leg between the ankle and knee or the distal one-third of the lower extremity between the ankle and the hip" as required by listing 4.11.[4]  "Brawny edema" as used in listing 4.11 means:

> [S]welling that is usually dense and feels firm due to the presence of increased connective tissue; it is also associated with characteristic skin pigmentation changes.  It is not the same thing as pitting edema.  Brawny edema generally does not pit (indent on pressure), and the terms are not interchangeable.  Pitting edema does not satisfy the requirements of 4.11A.

20 C.F.R. Part 404, Subpart P, App'x 1 § 4.00G3.

To reiterate, "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  Here, however, Gleason has failed to show that he has the requisite "extensive brawny edema" required to meet listing 4.11.  The ALJ discussed the relevant evidence pertaining to Gleason's intermittent leg edema (AR 19 (citations omitted))—none of which reveals a finding of extensive

---

[4] Nor does Gleason argue, much less produce evidence, that he suffered from "superficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least [three] months of prescribed treatment."  20 C.F.R. Part 404, Subpart P, App'x 1 § 4.11.

brawny edema. As such, in this particular instance, the ALJ sufficiently built a logical bridge from the evidence to his step-three conclusion that Gleason did not meet any listing, including listing 4.11. *See e.g.*, *Bumgardner v. Berryhill*, No. 3:17-cv-00081-RLY-MPB, 2018 WL 797394, at *3-4 (S.D. Ind. Feb. 9, 2018) (rejecting the claimant's argument that he met or equaled listing 4.11 where the medical records reflected edema of varying levels from "trace to plus two," but not extensive brawny edema); *Moses v. Colvin*, No. 2:13-cv-00235-JMS-MJD, 2014 WL 1659763, at *4 (S.D. Ind. Apr. 14, 2014) (same).

Furthermore, Dr. M. Brill and Dr. J. Sands, the state agency physicians who reviewed Gleason's record in November 2015 and March 2016, respectively, found that Gleason did not satisfy the criteria of listing 4.11. (AR 63-65, 75-76); *see* SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996) ("State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."). While the ALJ ultimately gave these doctors' opinions "little" weight and chose to assign Gleason more conservative limitations, the disability determination and transmittal forms completed by Dr. Brill and Dr. Sands (AR 67, 79) nonetheless "conclusively establish that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (alteration in original) (citations and internal quotation marks omitted); *see also Smith v. Astrue*, No. 4:11-cv-68-TWP-DML, 2012 WL 4119018, at *9 (S.D. Ind. Sept. 19, 2012); SSR 96-6p, 1996 WL 374180, at *3-4. Gleason has not produced any other physician's opinion on the issue of medical equivalence.

Despite these transmittal forms, Gleason suggests that the ALJ's step-three finding is still

9

flawed because Dr. Brill and Dr. Sands were unaware of the medical evidence concerning edema added to the record after their respective reviews in November 2015 and March 2016. (ECF 20 at 8 (citing AR 679)). But the later evidence that Gleason refers to does not reveal evidence of "extensive brawny edema" either; as explained above, this evidence reveals "+1 edema" or "minimal swelling." (AR 680, 682). And as to leg edema generally, Dr. Brill and Dr. Sands were aware that Gleason experienced edema in his left lower extremity when they concluded that he did not satisfy listing 4.11. (AR 64 ("Clmt reports ongoing issues with swelling asymmetric to RLE and pain in LLE . . . ."), 76 (same)).

In sum, while the ALJ should have specifically discussed listing 4.11 at step three, his conclusion that Gleason did not meet or equal any listing is still sufficiently articulated to allow the Court to perform a meaningful review as to listing 4.11, and it is supported by substantial evidence, including the opinions of Dr. Brill and Dr. Sands. *See Lloyd v. Berryhill*, 682 F. App'x 491, 496 (7th Cir. 2017) (finding the ALJ's failure to discuss a specific listing at step three was harmless error where the ALJ adequately discussed the listing's criteria and the claimant failed to show that he could satisfy the listing); *Fickler v. Colvin*, No. 8:11CV440, 2013 WL 1090405, at *16 (D. Neb. Mar. 15, 2013) (finding the ALJ's failure to discuss listing 4.11 was harmless error where there was no evidence of extensive brawny edema or persistent ulceration). Furthermore, the evidence of record dated after Dr. Brill's and Dr. Sands's review could not reasonably have changed these physicians' opinions as to whether Gleason met or equaled listing 4.11. *Cf. Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) ("An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion."); *Stage v. Colvin*, 812 F.3d 1121, 1125

(7th Cir. 2016) (remanding the case where a more recent diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment").  Consequently, Gleason's challenge to the ALJ's step-three finding concerning listing 4.11 does not necessitate a remand of this case.  *See generally Stephens v. Heckler*, 766 F.2d 284, 288 (7th Cir. 1985) ("If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough.").

### *D.  The Physical RFC*

Gleason also argues that the ALJ erred when assigning the physical RFC by failing to account for his purported need to elevate his leg above his heart.  (ECF 20 at 8).  Gleason's challenge to the RFC, however, is also unavailing.

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week.  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (second emphasis omitted).  That is, the "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*."  *Id.* at *1; *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. § 416.945(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 416.945(a)(3).  When crafting the RFC, the ALJ need only include those limitations in the RFC "that [are] supported by the medical evidence and that the ALJ found to be credible."  *McReynolds v. Berryhill*, 341 F.

11

Supp. 3d 869, 883 (7th Cir. 2018) (citation omitted).

Here, the ALJ assigned an RFC for a reduced range of sedentary work, specifying that Gleason "needs to elevate one of his legs to waist level for up to 30 minutes at a time for a total of up to two hours in an eight-hour day." (AR 18). In assigning the RFC, the ALJ considered Gleason's assertion that he "must elevate his legs over his heart 10 times a day for 20 to 30 minutes when his leg is swollen," noting that it was based on Gleason's "testimony." (AR 19; *see* AR 35-36). The ALJ also considered the various medical evidence showing that Gleason had left leg edema "at times" (AR 19 (citing AR 678-92)); some limited range of motion in his left knee (*id.* (citing AR 388-92)); and some diminished pulses in his left lower extremity (*id.* (citing AR 397, 556-58)). But the ALJ further observed that Gleason "frequently had no edema, cyanosis, or clubbing in his extremities" (*id.* (citing AR 373-80, 400-08, 410-555, 620-65)); "routinely had normal pulses in his . . . lower extremities (*id.*); and "ha[d] routinely been noted to be stable with no complaints" (*id.* (citing AR 678-89)).

The ALJ also considered the medical source opinions of Dr. Brill and Dr. Sands, the state agency physicians who reviewed Gleason's record in November 2015 and March 2016, respectively. (*Id.* (citing AR 63-65, 75-77)). Dr. Brill concluded that Gleason had the physical capacity to perform light-exertional work, which requires standing or walking up to six hours in an eight-hour workday. 20 C.F.R. § 416.967(b); SSR 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983). Dr. Sands concluded that Gleason could stand or walk up to four hours in an eight-hour workday, which limited him to sedentary work. 20 C.F.R. § 416.967(a); SSR 83-10, 1983 WL 31251, at *5. Notably, neither of these doctors included a limitation that Gleason must elevate his legs. (AR 63-65, 75-77). The ALJ ultimately decided to give "little" weight to these

12

opinions, opting to more conservatively limit Gleason to a reduced range of sedentary work.[5] (AR 19). But no other medical source of record issued an opinion that Gleason must elevate his legs throughout the day either, much less elevate them above his heart at the frequency that Gleason claims.

Consequently, Gleason's claimed limitation about elevating his legs above his heart rests entirely on his own testimony. But the ALJ found Gleason's symptom testimony "not entirely consistent" with the medical evidence (*id.*)—a finding which Gleason does not challenge on appeal and thus has waived. *See Swanson v. Apfel*, No. IP 99-1159-C H/G, 2000 WL 1206587, at *4 (S.D. Ind. Aug. 7, 2000) (acknowledging that a claimant waives an argument by failing to raise it in her opening brief); *see also Anderson v. Astrue*, No. 1:09-CV-00327, 2010 WL 3522574, at *9 n.7 (N.D. Ind. Aug. 31, 2010) (collecting cases).

"It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove [his] claim of disability." *Scheck*, 357 F.3d at 702 (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)); *see also Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." (citing 20 C.F.R. § 416.912(c)). As explained earlier, "[an] ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Rather, "the determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide."

---

[5]In doing so, the ALJ explained that Dr. Brill and Dr. Sands did not examine Gleason, did not have the benefit of reviewing the more recent evidence, and that "the totality of the evidence indicates that [Gleason] is more limited than opined by these consultants." (*Id.*).

13

*Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)).

Here, the ALJ considered not only the medical evidence but also the lack thereof—specifically, the lack of any medical source opinion stating that Gleason must elevate his legs at the height and frequency he claims throughout the day. (AR 18-19); *see Hall v. Barnhart*, No. 1:04-cv-1847-DFH-TAB, 2006 WL 3206096, at *4 (S.D. Ind. June 15, 2006) (explaining that the lack of objective medical evidence is a factor to be considered by the ALJ when assessing a claimant's symptom testimony). Ultimately, Gleason failed to carry his burden of producing medical evidence that shows his left leg edema is so severe that he must elevate his legs above his heart at least ten times a day for twenty to thirty minutes at a time. Consequently, Gleason's argument challenging the physical RFC is unavailing, and the Commissioner's final decision will be affirmed.

## IV. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Gleason.

SO ORDERED.

Entered this 16th day of April 2020.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

14